Electronically Filed
6/5/2023 11:45 PM
Penny Clarkston, Smith County District Clerk
Reviewed By: Gina McClung

CAUSE NO. 23-1349-C _____

| | | |
|---|---|---|
| FIRST CHRISTIAN CHURCH (DISCIPLES OF CHRIST) OF TYLER, | § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| vs. | § § | \_\_\_\_ JUDICIAL DISTRICT |
| CHURCH MUTUAL INSURANCE COMPANY S.I., f/k/a CHURCH MUTUAL INSURANCE COMPANY, | § § § § § | |
| Defendant. | § | SMITH COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, FIRST CHRISTIAN CHURCH (DISCIPLES OF CHRIST) OF TYLER, files this its Original Petition against Defendant, CHURCH MUTUAL INSURANCE COMPANY S.I., f/k/a CHURCH MUTUAL INSURANCE COMPANY, and, in support of its causes of action, would respectfully show the Court the following:

### I. PARTIES

1. Plaintiff, FIRST CHRISTIAN CHURCH (DISCIPLES OF CHRIST) OF TYLER, owns the property made the basis of this suit located at: 4202 S. Broadway Ave., Tyler, Texas 75701-8721 in Smith County, Texas (the "**Property**").

2. Defendant, CHURCH MUTUAL INSURANCE COMPANY S.I., f/k/a CHURCH MUTUAL INSURANCE COMPANY, ("Defendant") is a foreign entity authorized to engage in the insurance business in the State of Texas and may be served by serving its Registered Agent for Service of Process, Corporation Service Company at 211 East 7th Street, Suite 620, Austin, Texas 78701. Service is requested by private process server at this time.

### II. DISCOVERY

3. Plaintiff intends to conduct discovery under a Level 3 control plan pursuant to the Texas Rules of Civil Procedure.

## III.  CLAIM FOR RELIEF

4.  At this time, Plaintiff cannot assess accurately a definite limit to the damages it has sustained, or will sustain in the future, as a result of Defendant's acts. Given the early state of this litigation, projections have not been declared regarding the full extent and severity of the injuries and damages. In view of these circumstances, Plaintiff does not wish to impose any limit on what it may present to the jury or what the jury may consider as a range of damages in this case; however, Plaintiff makes the following representation in compliance with Tex. R. Civ. P. 47(c) to aid in the efficient court administration. Plaintiff believes that the most reasonable option afforded under Tex. R. Civ. P. 47, at this time, prior to the completion of discovery in the case, is to seek monetary relief over $1,000,000, exclusive of interest and costs, which is the only option that does not require Plaintiff to select a speculative, arbitrary cap on its damages. Plaintiff reserves the right to modify or adjust this statement, as the litigation progresses, and additional evidence is compiled. Regardless of what Plaintiff must state for administrative purposes as the amount of damages it seeks pursuant to Tex. R. Civ. P. 47(c), it desires to leave the final determination of damages, if any, to the sole province of the jury, based upon the credible evidence presented to the jury at trial.

## IV.  JURISDICTION AND VENUE

5.  This court has subject matter jurisdiction of this cause of action, because it involves an amount in controversy in excess of the minimum jurisdictional limits of this Court.

6.  Venue is proper in Smith County under Tex. Civ. Prac. & Rem. Code §15.002(a)(1) because all or a substantial part of the events or omissions giving rise to the claim occurred in said County. In particular, the loss at issue occurred in this County.

## V.  FACTUAL BACKGROUND

7.  Plaintiff ("**First Christian**") entered into agreements with Defendant to pay Defendant premiums in exchange for insurance coverage protecting Plaintiff's Property.

8.  The agreements were drafted by Defendant and assigned Policy Number 0166969-02-947159 (the "**First Policy**") with an effective date was from November 15, 2016 to November 15, 2019 (referred to as the "**First Policy Period**"), and Policy Number 0166969-02-040477 (the "**Second Policy**") with an effective date from November 15, 2019 to November 15, 2020 (referred to as the "**Second Policy Period**") (collectively referred to as the "**Policies**" and the "**Policy Periods**").

9.  Coverage under the Policies covers "direct physical loss of or damage" to the buildings on the Property as a result of a covered loss. Damage caused by hail and wind are covered losses.

10. During the Policy Periods a hail, wind, and rain storm hit the Property and severely damaged the buildings, roofs, rooftop-metal objects, and HVAC units.

11. As a result of the hail and wind damages First Christian and its congregation began to experience new leaks throughout the Property.

12. First Christian subsequently filed a claim for covered damages.

13. Defendant assigned the claim, claim number 1430069 (referred to as the "**Claim**").

**A.  Investigations, Reports, and Denial**

14. Soon after the Claim was made Defendant assigned the Claim to Mr. James Bowie ("Bowie"), an employee of Defendant. Bowie then retained EFI Global Inc. to investigate the Claim who in turn assigned engineer Daniel Hillner ("Hillner").

15. Defendant visited the Property on or about February 24, 2021. During this visit Defendant shaped its investigation of the Claim to create a pretextual report so that Defendant could deny the Claim despite the obvious covered damages.

16. During Hillner's February 2021 visit he spoke with First Christian's facilities manager Dave Hill ("Hill"). Hill informed Hillner that the roof leaks were new and had only occurred shortly after the hail and wind storms hit the buildings during the Policy Periods (six to eight months prior to Defendant's inspection for the main building).

17.  Despite this information of recent new leaks to the buildings Defendant then proceeded to ask Hill if he knew the age of the roofs. Hill provided information as to when the buildings were originally constructed and dates he believed the roofs were replaced.

18.  Based on this information Defendant began to build a pretext that the leaks were not due to covered hail or wind damage, but instead due to wear and tear which is excluded under the Policy.

19.  Defendant proceeded to carry out an obviously deficient investigation of the Property following this information. Defendant ignored easily accessible time stamped ariel images of the roof that proved the roofs were actually decades younger than what Defendant represents them to be.

20.  Defendant used the incorrect age of the roofs without confirming the dates of repairs and replacements as the basis of its conclusion that the roofs "appear to be past their useful service lives" and that excluded wear and tear was the cause.

21.  Moreover, Defendant failed to take moisture measurements or look for breached locations on the roof where the water was entering from even though it found hail strikes to the roof that caused "distress".

22.  Finally, Defendant's agent Hillner reported that he intended to obtain roof cores during his visit to the Property to evaluate the roof damage but notes that he was delayed due to weather and rescheduled.

23.  However, Hillner never reports that Defendant eventually obtained the roof cores it initially sought for its evaluation of the Claim. And even if Defendant did obtain these roof cores the report contains no discussion or any analysis of the roof cores.

24.  Defendant sent a letter denying First Christian's Claim on June 8, 2021. Defendant wrongfully asserted that the damage First Christian was experiencing was from wear and tear and not the result of "functional" hail and wind damage.

25. Moreover, Defendant states in its letter that the interior leaks were from "standing water and moisture intrusion through existing openings in the roof surface."

26. Defendant simply concludes that the damage is not "functional" damage without conducting necessary tests.

27. But Defendant does not claim to have found openings to the roofs at the Property and Defendant offers no explanations how standing water alone could enter the roof system without such an opening.

28. To date, Defendant has not paid First Christian the value of its Claim under its Policies with Defendant. As a result, First Christian has incurred additional damages and the increased costs of repair that were, and still are to this day, a natural, probable, and foreseeable consequence of Defendant's failure to pay the amount owed on the Claim. For example, the costs of repair have increased substantially since Defendant's denial of the Claim.

29. Defendant and its adjuster and engineer assigned to the Claim failed to perform a proper inspection and as a result prepared a report that failed to include all of the covered damage sustained at the Property and undervalued the damage observed during the inspection.

30. Moreover, Defendant and its adjuster performed an outcome-oriented investigation of First Christian's Claim, which resulted in a biased, unfair, and inequitable evaluation First Christian's losses for the covered property.

**B.    Policy Compliance**

31. First Christian fully complied with all requirements under the Policy to properly notify the Defendant of the loss to its covered property.

## VI.    CAUSES OF ACTION

**A.    Breach of Contract**

32. Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 31 of this petition.

33. Defendant entered into the Policies with First Christian.

34. First Christian's Property sustained damage during the Policy Periods as a result of hail and wind, both covered causes of loss.

35. Defendant has breached the terms of the Policy by wrongfully denying covered damages instead of paying the full benefits owed to First Christian under the Policies for a covered loss to the Property.

36. As a result of Defendant's breach of the Policy, First Christian has sustained: (1) actual damages, (2) consequential damages (related to increased costs of construction and other related consequential damages), and (3) incurred reasonable and necessary attorney's fees to date.

**B.    Insurance Code Violations**

37. Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 36 of this Petition.

*Prompt Payment of Claims Statute*

38. As set forth above, Plaintiff was insured under the Policies during the Policy Periods.

39. During the Policy Periods, a wind and hail storm swept through Smith County, Texas and damaged First Christian's Property.

40. As a result, First Christian gave proper notice of a claim to Defendant.

41. Defendant is under an obligation to promptly pay First Christian's Claim.

42. Defendant had investigated and received all documents reasonably requested by June 8, 2021 when it made its initial decision to deny the Claim. Defendant failed to pay the full claim amount and delayed the payment on covered damage to the Property.

43. To date, Defendant has not tendered payment for all of First Christian 's damages arising out of its insurance Claim with Defendant.

44. Therefore, Defendant has delayed payment of First Christian's Claim for a time exceeding the period specified by statute by wrongfully denying damages clearly covered from the Policies. Defendant has yet to pay any amount on First Christian's Claim.

45. The failure of Defendant to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Article 542.058 of the Texas Insurance Code.

46. As a result of the insurance code violations listed above, First Christian, in addition to First Christian's claim for damages, is entitled to statutory interest and attorney's fees as set forth in Article 542.060 of the Texas Insurance Code.

*541 Insurance Code Violations*

47. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

48. Defendant violated § 541.051 of the Texas Insurance Code by misrepresenting the terms and benefits of coverage:

   a. When Defendant stated that the roof damage to the Property was not considered functional damage under the Policy and therefore now covered.

*Violation of § 541.060(a)(1):*

49. Defendant violated § 541.060(a)(1) by misrepresenting to First Christian a material fact or policy provision relating to coverage at issue by undervaluing the damage to the Property.

50. Specifically, Defendant has misrepresented the following:

   a. That the roof system at the Property was not damaged enough to meet the deductible;

   b. That there was existing non-storm related openings to the roofs when Defendant's engineer located no tears or open seams to the roofs;

   c. That there was little to no collateral damage on the roof indicative of functional damage;

   d. That the roof systems were significantly older than what they actually are thereby claiming premature failure of the roofs due to wear and tear;

   e. That there is no functional damage to the Property's roofs despite new leaks following the covered storm damage;

   f. That standing water on the roof was responsible for new recent interior leaks; and

   g. That no interior storm damage existed at the Property.

51. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(1), which proximately caused First Christian damages.

*Violation of § 541.060(a)(2):*

52. Defendant violated § 541.060(a)(2) by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim as insurer's liability had become reasonably clear that the covered damage caused substantial damage to First Christian's Property.

53. Defendant has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement by:

   a. Making the misrepresentations listed at paragraph 50;

   b. Failing to properly investigate the roof damage

   c. Failing to perform any tests to the roof, measure the moisture content of the roof, or analyze roof core samples;

   d. Suggesting a lack of collateral damage meant no "functional" damage occurred when Defendant found at least four areas of the roof that were "soft" indicating functional damage and arbitrarily declining to further investigate these areas;

   e. Failing to record the obvious evidence of covered hail and wind damage across the entire roof system;

   f. Failing to properly investigate the age of the roofs while simultaneously relying on the alleged age of the roofs as its basis for all damage being excluded wear and tear;

   g. Misrepresenting to First Christian that the roof had existing non-storm related openings despite its engineer finding a lack of tears or open seams across the roof;

   h. Failing to write an estimate that included obvious covered damage from hail and wind to the roofs at First Christian's Property; and

   i. Hiring an engineer in an effort to solely deny First Christian's Claim, despite clear evidence of covered damage to the contrary.

54. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(2), which proximately caused First Christian damages.

*Violation of § 541.060(a)(3):*

55. Defendant violated § 541.060(a)(3) by failing to promptly provide First Christian a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of the Claim or offer of a compromise settlement of a claim.

56. Defendant has failed to promptly provide First Christian a reasonable explanation of the basis for Defendant's denial of the Claim. Defendant's letter dated June 8, 2021, was based solely on its engineer's outcome-oriented investigation.

57. Defendant failed to explain why the soft areas of the roof that Defendant found were not caused by hail and wind and or explain what the cause of the "soft" underlayment damage was. Defendant simply suggested that an alleged lack of damage to other roof top metal objects could only mean that the soft areas could not be functional hail or wind damage without further explanation.

58. Moreover, Defendant offered no explanation how Defendant's alleged cause of interior leaks (standing water) could penetrate the roof without an existing breach to the roof systems.

59. Defendant merely based its decision on its adjuster's unreasonable and baseless Claim evaluation and its engineer's pretextual report.

60. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(3), which proximately caused First Christian damages.

*Violation of § 541.060(a)(4):*

61. Defendant failed to provide First Christian notice within a reasonable time that its Claim has been denied or approved. Defendant was notified of the Claim on or about November 23, 2020 and subsequently visited the Property to inspect the storm damage. There is no reason Defendant could not have issued a decision letter prior to June 8, 2021.

62. Defendant violated § 541.060(a)(4) by failing within a reasonable time to affirm or deny coverage of a claim to First Christian.

*Violation of § 541.060(a)(7):*

63. Defendant violated § 541.060(a)(7) by refusing to pay First Christian's Claim without conducting a reasonable investigation with respect to the Claim.

64. Defendant has refused to pay First Christian's Claim without conducting a reasonable investigation by:

   a. Making the misrepresentations listed at paragraph 50;

   b. Failing to properly investigate the roof damage

   c. Failing to perform any tests to the roof, measure the moisture content of the roof, or analyze roof core samples;

   d. Suggesting a lack of collateral damage meant no "functional" damage occurred when Defendant found at least four areas of the roof that were "soft" indicating functional damage and arbitrarily declining to further investigate these areas;

   e. Failing to record the obvious evidence of covered hail and wind damage across the entire roof system;

   f. Failing to properly investigate the age of the roofs while simultaneously relying on the alleged age of the roofs as its basis for all damage being excluded wear and tear;

   g. Misrepresenting to First Christian that the roof had existing non-storm related openings despite its engineer finding a lack of tears or open seams across the roof;

   h. Failing to write an estimate that included obvious covered damage from hail and wind to the roofs at First Christian's Property; and

   i. Hiring an engineer in an effort to solely deny First Christian's Claim, despite clear evidence of covered damage to the contrary.

65. Each of these acts and omissions, singularly or in conjunction with others, constituted a violation of Texas Insurance Code § 541.060(a)(7), which proximately caused First Christian damages.

66. Defendant has violated § 541.061 by making an untrue statement of material fact including:

   (1) That no functional damage existed to the roofs at the Property

 (2) That the damage is caused by wear and tear based on the roofs being substantially older than what they actually are; and

 (3) That little to no evidence of collateral damage exists and therefore significant hail could not have fallen at the Property to cause functional damage.

### C.  DTPA Violations

67. Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 66 of this Petition.

68. At all material times hereto, First Christian was a consumer who purchased insurance products and services from Defendant.

69. Defendant is a "person" as defined by § 17.45 of the Texas Business and Commerce Code.

70. Defendant has violated the Texas Deceptive Trade Practices Act by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing; and engaging in an unconscionable action or course of action as prohibited by the DTPA § 17.50(a)(1)–(3) in that Defendant took advantage of First Christian's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Insurance Code.

71. Specifically, Defendant tried to use First Christian's own communications against it without actually investigating the age of the roofs, requesting documents, or asking any other individuals of First Christian the ages of the roof. Based on information and belief, Defendant did this in order to use the incorrect information as a pretext to deny the Claim without ever attempting to obtain sufficient information to determine the age of the roofs.

72. Moreover, Defendant tried to suggest that standing water was the cause of interior leaks across all of the buildings and roofs. But Defendant never even attempted to explain how standing water alone could penetrate through the roofs without openings to the TPO/PVC and modified bitumen sections of the roofs also existing.

73.  Upon information and belief, Defendant knowingly committed the acts complained of. As such, First Christian is entitled to exemplary and/or treble damages and reasonable attorney's fees pursuant to the DTPA and Texas Insurance Code § 541.152(a)-(b).

**D.    Breach of The Duty of Good Faith and Fair Dealing**

74.  Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 73 of this Petition.

75.  First Christian and Defendant entered into a valid and enforceable insurance policy.

76.  Defendant owed First Christian the common law duty of good faith and fair dealing.

77.  Defendant breached the common law duty of good faith and fair dealing by wrongfully denying the Claim and delaying payment on the Claim when Defendant knew or should have known liability was reasonably clear.

78.  Specifically, Defendant has breached the common law duty of good faith and fair dealing owed to Plaintiff by:

 a. Making the misrepresentations listed at paragraph 50;

 b. Failing to properly investigate the roof damage

 c. Failing to perform any tests to the roof, measure the moisture content of the roof, or analyze roof core samples;

 d. Suggesting a lack of collateral damage meant no "functional" damage occurred when Defendant found at least four areas of the roof that were "soft" indicating functional damage and arbitrarily declining to further investigate these areas;

 e. Failing to record the obvious evidence of covered hail and wind damage across the entire roof system;

 f. Failing to properly investigate the age of the roofs while simultaneously relying on the alleged age of the roofs as its basis for all damage being excluded wear and tear;

 g. Misrepresenting to First Christian that the roof had existing non-storm related openings despite its engineer finding a lack of tears or open seams across the roof;

 h. Failing to write an estimate that included obvious covered damage from hail and wind to the roofs at First Christian's Property; and

 i. Hiring an engineer in an effort to solely deny First Christian's Claim, despite clear

evidence of covered damage to the contrary.

79. Upon information and belief, Defendant's actions were performed without due regard or care for the Claim process and were done intentionally or with gross negligence.

80. Defendant was aware at all times that its actions would result in the denial or underpayment of First Christian's Claim, and cause extraordinary harm associated with First Christian's Claim.

81. As a result of Defendant's acts and omissions, First Christian sustained actual damages.

## VII. ATTORNEY'S FEES

82. Plaintiff reasserts and realleges the allegations set forth in paragraphs 7 through 81 of this Petition.

83. First Christian engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorney's fees and expenses through trial and any appeal.

84. First Christian is entitled to reasonable and necessary attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001–38.003 because First Christian is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

85. First Christian further prays that it be awarded all reasonable attorney's fees incurred in prosecuting its causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

86. First Christian further prays it be awarded all reasonable and necessary attorney's fees incurred in prosecuting First Christian's DTPA causes of action above pursuant to § 17.50(d).

## VIII. CONDITIONS PRECEDENT

87. All conditions precedent to First Christian's right to recover have been fully performed or have been waived by Defendant.

### IX.  DEMAND FOR JURY

88.     Pursuant to Rule 216 of the Texas Rules of Civil Procedure, First Christian herein requests a jury trial and along with the filing of the Original Petition has tendered to the Clerk of the Court the statutory jury fee.

### X.  DISCOVERY REQUESTS

89.     Pursuant to Rule 194, you are required to disclose, within thirty (30) days after filing an Answer herein, the information or material described in Rule 194.2(b)1–12.

### XI.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff herein prays that, upon final hearing of the case, it recover actual damages, statutory interest, consequential damages, and treble/exemplary damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Plaintiff be awarded attorney's fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

*/s/ Andrew D. Spadoni*
Preston J. Dugas III
State Bar No. 24050189
pdugas@dcclawfirm.com
Andrew D. Spadoni
State Bar No. 24109198
aspadoni@dcclawfirm.com

**DUGAS & CIRCELLI, PLLC**
1701 River Run, Suite 703
Fort Worth, Texas 76107
Telephone:    (817) 945-3061
Facsimile:    (682) 219-0761

**ATTORNEYS FOR PLAINTIFF**