**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **FIRST CHIRSTIAN CHURCH** | § | |
| **(DISCIPLES OF CHRIST) OF TYLER,** | § | |
| | § | **CIVIL ACTION NO. 6:23-CV-00342-JDK-** |
| | § | **JDL** |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CHURCH MUTUAL INSURANCE** | § | |
| **COMPANY, S.I.,** | § | |
| | § | |
| **Defendant.** | | |

**<u>REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE</u>**

Before the court is Defendant Church Mutual Insurance Company's amended motion for partial summary judgment (Doc. No. 23). Plaintiff First Christian Church filed a response (Doc. No. 28) to which Defendant filed a reply (Doc. No. 32). The district court referred the motion to the undersigned for findings of fact, conclusions of law, and recommendations for the disposition of the case (Doc. No. 29). For the reasons stated herein, the court **RECOMMENDS** that Defendant's amended partial motion for summary judgment (Doc. No. 23) be **GRANTED-IN-PART AND DENIED-IN-PART**.

Related to the motion for summary judgment is Defendant's motion to strike certain late discovery disclosures, or in the alternative, to continue the current trial date set for August 19, 2024. (Doc. No. 38). Plaintiff filed a response (Doc. No. 40) and Defendant filed a motion for extension of time to file a reply (Doc. No. 41). The district court referred these motions to the undersigned for disposition (Doc. No. 43). For the reasons stated herein, Defendant's motion to strike Plaintiff's amended disclosures (Doc. No. 38) is **DENIED**. Defendant's request for

1

continuance is **DENIED** without prejudice to its re-urging by separate motion to the district court judge. Defendant's motion for extension of time to file a reply concerning the motion to strike (Doc. No. 41) is **DENIED**.

## BACKGROUND

### I.    Factual Background

This case arises out of an insurance claim from a storm in April of 2020 that caused wind and hail damage to the roofs on Plaintiff's property.[1] Defendant insured Plaintiff's property during this period. (Doc. No. 4, at ¶¶ 8, 24–28.) A month before the storm, Defendant sent an underwriter, Mike Wheeler, to inspect Plaintiff's property. (Doc. No. 28-4.) Wheeler's inspection report stated that the roofs were "in good condition with no repairs needed." *Id.* at 3. After Plaintiff gave Defendant notice of the loss, Defendant retained the services of independent adjuster Eddie Upchurch to inspect the property. Upchurch submitted a general loss report detailing his findings regarding damage to the roofs and his recommendation for certain repairs/replacement. (Doc. No. 28-3.) Internal notes from Defendant's claim file show that Management conducted an independent review of Upchurch's report. On January 21, 2021, Claims Handler James Bowie sent an email to Upchurch stating, "This claim has a cosmetic exclusion for hail and wind damage. The damage that you documented appears to all be cosmetic. I am going to see if we can get an engineer out there. Will keep you posted and you will have to revise your estimate." (Doc. No. 28-2, at 32.)

Defendant subsequently retained Daniel Hillner, a licensed professional engineer, to conduct an additional inspection of the property. Hillner also submitted a report detailing his findings regarding damage to the roofs. (Doc. No. 23-4.) Defendant ultimately denied Plaintiff's claim based on Hillner's report. (Doc. No. 28-5.)

---

[1] Plaintiffs' complaint does not state exactly when the alleged hailstorm occurred, *see* Doc. No. 4, but other filings by the parties seem to agree that the date of loss is April 12, 2020. *See* Doc. No. 28, at 4; Doc. No. 28-3, at 1.

## II.    Procedural History

On June 5, 2023, Plaintiff brought against Defendant in Texas state court, asserting claims for breach of contract, violations of Chapters 541 and 542 of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act, and violations of Defendant's common law duty of good faith and fair dealing. (Doc. No. 4, at ¶¶ 32–81.) On July 11, 2023, Defendant removed the case to federal court based on diversity jurisdiction. (Doc. No. 1.) Plaintiff seeks relief in the form of actual, consequential, and exemplary damages, statutory interest, attorneys' fees, costs of court, pre- and post-judgment interest, and such other and further relief to which Plaintiff is entitled. (Doc. No. 4 at 14.)

Defendant filed an amended answer (Doc. No. 15) on October 30, 2024, asserting various affirmative defenses, including failure to mitigate damages, excluded damages, failure to satisfy conditions precedent, prior material breach, and deductible offset.

On April 26, 2024, Defendant filed this amended motion for partial summary judgment (Doc. No. 23) on Plaintiff's extra-contractual claims for violations of the Texas Insurance Code, the DTPA, and the common law duty of good faith and fair dealing. Defendant also seeks summary judgment on Plaintiff's claims for exemplary and treble damages, and attorney's fees pursuant to Texas Insurance Code § 542A.007.

## III.    Motion for Summary Judgment

### a.    Statutory and Common Law Bad Faith

Defendant moves for summary judgment on Plaintiff's claims for bad faith under the common law, the Texas Insurance Code, and the DTPA. Defendant argues that there is no evidence of an improper investigation because Defendant's engineer, David Hillner, concluded that the damage to the property was cosmetic only or not from a covered loss.

Plaintiff responds that Defendant ignored the independent adjuster's recommendation, instructed the independent adjuster that it would have to change its recommendation before any additional inspection had occurred, and then hired Engineer Hillner to generate a contrary report as a pretext to denying the claim, all of which is evidence of a bad faith investigation.

b.  Material Misrepresentations Under the Insurance Code

Defendant moves for summary judgment on Plaintiff's claims for misrepresenting a material fact or policy provision related to coverage in violation of the Insurance Code. Defendant argues that the Cosmetic Surface Endorsement in the Policy clearly excludes payment for damage to roofing caused by wind or hail that does not impact the functionality of the roofing.

Plaintiff responds that Defendant misrepresented that it would pay for covered hail damage to Plaintiff's property when, in reality, it had no intention of doing so—even when the independent adjuster report confirmed the damage was caused by a hailstorm. Plaintiff also asserts that Defendant misrepresented to Plaintiff that the roof was in good condition and that there was no water damage, but then later claimed that the damage to the property was due to water seepage, faulty maintenance, and wear and tear.

c.  Reasonable Explanation for Denial of Coverage

Plaintiff alleges that Defendant failed to promptly offer a reasonable explanation for its denial of the claim in violation of Texas Insurance Code § 541.060(a)(3). Defendant argues that it clearly articulated its bases for denying the claim in its denial letter and that Plaintiff has not shown that the denial letter was deficient.

Plaintiff responds that Defendant's denial letter (1) left out the fact that the underwriting report and independent adjuster report favored Plaintiff's claim; (2) failed to explain how the roof is not covered under the Policy when the independent adjuster estimate showed covered hail

4

impact damage; and (3) failed to explain why the interior water damage was not covered, given that the underwriting report created before the storm indicated no interior water damage.

    d.  <u>Prompt Affirmance or Denial of Coverage</u>

Defendant argues that Plaintiff has not shown that Defendant failed to promptly affirm or deny coverage of the claim in violation of Texas Insurance Code § 541.060(a)(4). Plaintiff responds that Defendant waited over six months from the time the claim was submitted to send out its denial letter.

    e.  <u>Independent Injury & Punitive Damages</u>

Defendant contends that under Texas law, Plaintiff cannot recover any damages above policy benefits because Plaintiff has not shown an injury independent of the breach of the insurance contract. Plaintiff responds that the Texas Insurance Code permits an insured to seek damages for the wrongful denial of policy benefits as actual damages under the statute. And because the question of coverage remains unsettled in this case, Plaintiff argues that the court cannot resolve the extra-contractual claims at summary judgment.

    f.  <u>Availability of Attorney's Fees Under Chapter 542A</u>

Defendant argues that attorney's fees for Plaintiff's extra-contractual claims are not available in this case under Texas Insurance Code § 542A.007(c) because Plaintiff's Rule 26 disclosures asserted actual damages in the amount of $514,915.66. Plaintiff responds that the amounts alleged in the Rule 26 disclosures were in error, but that Plaintiff amended its disclosures when it became aware of the error. Further, Plaintiff asserts that Defendant had already received the proper damages calculation in Plaintiff's pre-suit notice letter and as an attachment to Plaintiff's expert witness disclosures.

## LEGAL STANDARD

A motion for summary judgment should be granted if the record, taken as a whole,

"shows that there is no genuine issue as to any material fact  and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion,  against a party who fails to make a showing sufficient to establish the existence of an element  essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[T]he party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are genuine if "the evidence is such that  a reasonable jury could return a verdict for the nonmoving party." *Id.* If the moving party does not have the ultimate burden of persuasion, the party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see also Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).

If the moving  party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's  response." *Little*, 37 F.3d at 1075. If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file,  or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir.

1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995).

## DISCUSSION

### I.    Statutory & Common Law Bad Faith Claims

Defendant argues that Plaintiff's bad faith claims are without merit. (Doc. No. 28, at 6–7). Defendant asserts that it promptly responded to Plaintiff's claim by sending an experienced adjuster and then Engineer Hillner to inspect the roofs on Plaintiff property pursuant to its obligation to reasonably investigate Plaintiff's claim. *Id.* at 7. Hillner concluded that the damage to the roof was not covered by the Policy and Defendant denied the claim. Defendant submits that whether or not Hillner's conclusions were ultimately incorrect is insufficient to support a claim for bad faith. *Id.* at 8. Further, Defendant notes that under Texas law, Plaintiff's extra-contractual claims pursuant to the Texas Insurance Code and the DTPA require the same predicate for recovery as the common law bad faith claim for wrongful denial of benefits. Thus, Defendant concludes, because there is no merit to the common law bad faith claim, Plaintiff cannot recover on the other extra-contractual claims. *Id.* at 7.

Plaintiff responds that under Texas law, extra-contractual claims remain viable to the extent the insurance policy affords coverage. (Doc. No. 28, at 11.) Defendant has not moved for summary

judgment on Plaintiff's breach of contract claim for failure to pay a covered loss under the Policy. Thus, to the extent that coverage for the loss remains undetermined, Plaintiff asserts that the extra-contractual claims remain viable. *Id.* Regardless, Plaintiff contends that there is sufficient evidence of Defendant's bad faith in denying Plaintiff's claim to survive summary judgment. Plaintiff notes that under Texas law, an insurer cannot investigate a claim in a manner calculated to construct a pretextual basis to deny the claim. *Id.* at 17. Here, Plaintiff contends that management for Defendant intentionally ignored the independent adjuster's original recommendation to pay on the claim due to hail damage and ordered the adjuster to revise his estimate before any additional inspection occurred. *Id.* at 8, 18. Defendant then hired Engineer Hillner to conduct an additional inspection, even though it was Defendant's policy to leave that determination to the independent adjuster and the adjuster did not request any additional inspection or expert opinion. *Id.* at 19.

Plaintiff also argues that Defendant misled Plaintiff regarding the ultimate bases for denying the claim. *Id.* For instance, the denial letter stated that the damage to the roofs was due to non-storm-related wear and tear and inadequate maintenance. *Id.* But the letter did not disclose that a few weeks before the storm, Defendant's underwriter had inspected the property and found that the roofs were in good condition with no need for repairs and no water damage. *Id.* at 19–20. Plaintiff also notes that the underwriting report and the independent adjuster's report—which both favor Plaintiff's claim—were never disclosed to Plaintiff during the adjustment of the claim. *Id.* at 20.

In its reply, Defendant concedes that a breach of contract is a pre-condition to the viability of Plaintiff's extra-contractual claims. But, Defendant contends, it does not follow that Plaintiff's extra-contractual claims cannot be resolved at summary judgment just because coverage under the Policy remains undetermined. (Doc. No. 32, at 3–4.) Here, Defendant argues that there is no evidence that Defendant's determination of coverage was objectively unreasonable. Defendant

submits that (1) it was not required to comply with its own internal policy in adjusting the claim, (2) it was not required to disclose the underwriting and independent adjuster reports to Plaintiff, and (3) the mere fact that Engineer Hillner reached a different conclusion than the independent adjuster is not evidence that Hillner's report is biased. *Id.* at 5–6, 11.

Under Texas Insurance Code § 541.060(a)(2) & (7), an insurer may be held liable for "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim" when "the insurer's liability has become reasonably clear," or "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." Both the Insurance Code and the TDPA provide private causes of action for violations of these insurance code provisions. *See* Tex. Ins. Code § 541.151; Tex. Bus. & Comm. Code § 17.50(a). Additionally, an insurer has a common law duty "to deal fairly and in good faith with its insured in the processing and payment of claims." *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995). Together, these are generally referred to as statutory and common law "bad faith" claims.

Under both the common law and the Insurance Code, "an insurer violates its duty of good faith and fair dealing by denying or delaying payment of a claim if the insurer knew or should have known that it was reasonably clear that the claim was covered. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 49 (Tex. 1997). However, "insurance carriers maintain the right to deny questionable claims without being subject to liability for an erroneous denial of the claim." *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). Evidence which only shows a bona fide dispute as to coverage is insufficient to sustain a claim for bad faith. *Id.*; *see also State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 448 (Tex. 1997). Whether the insurer's liability has become reasonably clear is a fact issue for the jury. *Giles*, 950 S.W.2d at 56.

The mere fact that the insurer relies on an expert's report to deny a claim does not foreclose the possibility of bad faith. *Nicolau*, 951 S.W.2d at 448. "[A]n insurer cannot insulate itself from

bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for denial." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998). For instance, in *Simmons*, the Texas Supreme Court upheld a jury's finding of bad faith because there was evidence at trial that the insurer "knowingly and repeatedly ignored evidence that the insureds did not burn down their home and that they had no motive for arson." *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 198 (Tex. 1998) (discussing *Simmons*, 963 S.W.2d at 45–47).

Before reaching the merits of the parties' arguments about the bad faith claims, the court finds it appropriate to clarify some of Plaintiff's assertions about the viability of these claims in relation to coverage. First, Plaintiff's cites *State Farm Lloyds v. Page* for the proposition that "to the extent the policy affords coverage, extra-contractual claims remain viable." 315 S.W.3d 525, 532 (Tex. 2010). From this, Plaintiff seems to argue that an extra-contractual claim cannot be dismissed as long as the breach of contract claim remains unresolved. However, in *Page*, the defendant argued that there was no bad faith because there was no coverage for the plaintiff's claim, not because there was no independent evidence of bad faith. *Id.* at 527 ("Because Page's breach of contract claim was not viable, State Farm contended, summary judgment was proper on her extra-contractual claims as well."). Coverage is generally a necessary pre-condition for bad faith, but coverage alone will not save an otherwise meritless bad faith claim. *See id.* at 532 ("There can be no liability under [the Insurance Code] if there is no coverage under the policy."); *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 497 (Tex. 2018) ("[E]ven assuming that there was coverage, the mere existence of coverage would not prove that the insurer violated the statute or its common-law duties by denying the claim.").

Second, Plaintiff's statement that its DTPA claim remains viable even if there is a bona fide coverage dispute is misplaced. Texas Business & Commerce Code § 17.50(a)(4) provides a cause of action for "the use or employment by any person of an act or practice in violation of

Chapter 541, Insurance Code." Thus, "[w]hen an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either statutory claim." *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 848 (Tex. App. 2017); *Higginbotham*, 103 F.3d at 460 ("Texas courts have clearly ruled that these extra-contractual tort claims [under the DTPA] require the same predicate for recovery as bad faith causes of action in Texas."). Of course, to the extent that Plaintiff's DTPA claim does not rely on the same predicate as the bad faith claims, the DTPA claim remains viable. But Plaintiff's complaint does not clearly articulate a basis for a DTPA claim separate from the bad faith claims, and at the hearing on this motion for summary judgment, Plaintiff's counsel denied that any such independent DTPA claim exists in this case.

Nonetheless, the court is satisfied that Plaintiff has demonstrated that material fact issues exist which preclude summary judgment on Plaintiff's statutory and common law bad faith claims. Here, Defendant retained an underwriter who submitted a report which indicated that the roof was in generally good condition a few weeks before the storm. *See* Doc. No. 28-3. The independent adjuster report indicated that there was wind and hail damage to the roofs that was covered by the Policy and recommended paying on the Policy. *See* Doc. No. 28-4. The claim notes show that rather than pay on the claim, management presumed that the damage was cosmetic only and instructed the independent adjuster to change his report before any additional inspection had occurred. *See* Doc. No. 28-2. Multiple district courts have denied an insurer's motion for summary judgment on similar grounds. *See Marshall Mall Invs. LP v. Allied Prop. & Cas. Ins. Co.*, No. 2:21-CV-00109-RWS, 2023 WL 5682412, at *5 (E.D. Tex. July 5, 2023) (denying summary judgment where, among other things, the insurer removed a qualified adjuster and hired an engineer that the insured alleged was biased); *see also 2223 Lombardy Warehouse, LLC v. Mount Vernon Fire Ins. Co.*, No. 3:17-CV-2795-D, 2019 WL 1583558, at *9 (N.D. Tex. Apr. 12, 2019)

(denying summary judgment where insured submitted evidence that insurance adjuster originally believed a roof replacement was necessary and insurer instructed him to change his recommendation to avoid paying on the claim).

Last, Defendant did not provide the underwriting report or independent adjuster report to Plaintiff or to Engineer Hillner during the adjustment of the claim. *See* Doc. No. 28-5. Defendant contends that it was not required to disclose the reports to Plaintiff. But whether it was required to make the disclosure is not the issue. The issue is whether Defendant engaged in a biased investigation. A jury could reasonably infer that only disclosing favorable information about a claim when the insurer knows of potentially unfavorable information is evidence of bias. Further, at the hearing on this motion for summary judgment, defense counsel suggested that giving the independent adjuster report to Engineer Hillner could have improperly influenced his objective analysis. But a rational jury could just as easily decide that failing to give an engineer contrary information may also skew his analysis. Accordingly, Defendant's motion for summary judgment on Plaintiff's statutory and common law bad faith claims should be denied.

## II.    Material Misrepresentations Under the Insurance Code

Plaintiff asserts that Defendant misrepresented a material fact or policy provision related to coverage, but Defendant contends that it did not misrepresent the terms of the Policy. (Doc. No. 23, at 11.) Defendant argues that the Exclusion Provision in the Policy clearly excludes payment for damage to roofing caused by wind or hail that does not impact the functionality of the roofing. *Id.* Plaintiff responds that Defendant misrepresented that it would pay for covered hail damage to Plaintiff's property when, in reality, it had no intention of doing so—even when the independent adjuster report confirmed the damage was caused by a hailstorm. (Doc. No. 28, at 13–14.) Plaintiff also asserts that Defendant misrepresented to Plaintiff that the roof was in good

condition and that there was no water damage, but then later claimed that the damage to the property was due to water seepage, faulty maintenance, and wear and tear. *Id.*

Plaintiff seeks relief under Texas Insurance Code §§ 541.051(1)(A)–(B),[2] 541.060(a)(1),[3] and 541.061(1).[4] "An affirmative misrepresentation of insurance coverage may give rise to claims" pursuant to these Insurance Code provisions. *Ramirez v. GEICO*, 548 S.W.3d 761, 774 (Tex. App.—El Paso 2018, pet. denied). However, numerous courts have held that these provisions only apply to misrepresentations about the terms and benefits of the policy itself—not the facts giving rise to a claim for coverage. *See Rockbrook Realty Ltd. v. Travelers Lloyds Ins. Co.*, No. 3:16-CV-2376-D, 2016 WL 8674683, at *3–*4 (N.D. Tex. Nov. 18, 2016); *see also Anna T. v. Golden Rule Ins. Co., No. 1:22-CV-00715-ADA*, 2023 WL 6690940, at *6 (W.D. Tex. Oct. 12, 2023), *report and recommendation adopted*, No. 1:22-CV-00715-ADA, 2023 WL 9005661 (W.D. Tex. Dec. 28, 2023). Here, Plaintiff does not claim that it was misled about the terms of the Exclusion Provision in the Policy, only that Defendant's reliance on the Exclusion Provision was pretextual. Accordingly, the court finds that no genuine issue of material fact exists and recommends granting Defendant's motion for summary judgment on Plaintiff's claims for misrepresentations in violation of Texas Insurance Code §§ 541.051(1)(A)–(B), 541.060(a)(1), and 541.061(1).

---

[2] Texas Insurance Code § 541.051(1)(A)–(B): "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to: (1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued: (A) the terms of the policy; [or] (B) the benefits or advantages promised by the policy . . . ."

[3] Texas Insurance Code § 541.060(a)(1): "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue . . . ."

[4] Texas Insurance Code § 541.061(1): "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by: (1) making an untrue statement of material fact . . . ."

III.     **Reasonable Explanation for Denial of Coverage**

Plaintiff alleges that Defendant failed to promptly offer a reasonable explanation for its denial of the claim in violation of Texas Insurance Code § 541.060(a)(3). Defendant argues that it clearly articulated its bases for denying the claim in its June 7, 2021 denial letter and that Plaintiff has not shown that the denial letter was deficient. (Doc. No. 23, at 10.) Plaintiff responds that Defendant's denial letter (1) left out the fact that the underwriting report and independent adjuster report favored Plaintiff's claim; (2) failed to explain how the roof is not covered under the Policy, given that the IA estimate showed covered hail impact damage; and (3) failed to explain why the interior water damage was not covered, given that the underwriting report created before the storm indicated no interior water damage. (Doc. No. 28, at 14–15.)

An insurer violates Texas Insurance Code § 541.060(a)(3) when it fails to promptly "provide to the policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim." Here, Defendant's denial letter stated that Defendant's "investigation found no functional damage to the TPO, modified bitumen or metal roofing of the church and Christian Life Center Buildings." (Doc. No. 23-3, at 2.) Further, "[i]inspection of the interior found water damage to the ceilings and walls in numerous rooms within the buildings, without corresponding roof damage." *Id.* The letter goes on to explain that Engineer Hillner's investigation revealed that the storm-related damage to the roof was cosmetic only and that the interior water damage was "consistent with standing water and moisture intrusion through existing openings in the roof surface." *Id.* Defendant also attached a copy of Hillner's report to the denial letter along with a copy of the Exclusion Provision in the Policy. *Id.* Although Plaintiff may disagree with the bases for the denial of the claim, Defendant gave a clear and reasoned explanation for the denial of the claim, along with supporting documentation. *See Salinas v. State Farm Fire & Cas. Co.*, No. CV B-10-194,

14

2012 WL 13055350, at *7 (S.D. Tex. Feb. 6, 2012); *see also Nieto v. State Farm*, No. 1:23-CV-004, 2024 WL 964720, at *3 (S.D. Tex. Mar. 6, 2024). Accordingly, the court finds that no genuine issue of material fact exists and recommends granting Defendant's motion for summary judgment on Plaintiff's claim for failure to provide a reasonable explanation for the denial of the claim in violation of Texas Insurance Code § 541.060(a)(3).

## IV.    Prompt Affirmance or Denial of Coverage

Plaintiff alleges that Defendant failed to promptly affirm or deny coverage of the claim in violation of Texas Insurance Code § 541.060(a)(4). Defendant argues that Plaintiff has not shown that the denial letter was untimely. (Doc. No. 23, at 10.) Plaintiff responds that Defendant waited over six months from the time the claim was submitted to send out its denial letter. (Doc. No. 28, at 14–15). Defendant replies that it sent the denial letter only six weeks after it received the engineering report from Hillner. Further, Defendant avers that the claim notes show Defendant contacted Plaintiff's public adjuster, Rachel Smith, on May 11, 2021, seeking further information, and it was Smith's failure to respond that delayed the denial letter. (Doc. No. 32, at 7–8.)

An insurer violates Texas Insurance Code § 541.060(a)(4) if it fails within a reasonable time to "affirm or deny coverage of a claim to a policyholder" or "submit a reservation of rights to a policy holder." Here, Defendant has not presented any case law on what a reasonable period of time is for affirming or denying a claim. *See* Fed. R. Civ. P. 56 (stating it is the movant's burden on summary judgment to show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). Defendant submits that the delay in denying the claim was due to multiple potentially reasonable circumstances. But a rational jury could find otherwise, given that there are material fact issues concerning Plaintiff's bad faith claims. Accordingly, Defendant's motion for summary judgment should be denied on Plaintiff's claim for failure to promptly affirm or deny coverage in violation of Texas Insurance Code § 541.060(a)(4).

## V.    Independent Injury & Exemplary Damages

Defendant contends that under Texas law, when the insured's claim is based on the denial of policy benefits, a statutory or common law violation does not permit recovery of damages beyond policy benefits unless the violation causes an injury independent from the loss of benefits. (Doc. No. 23, at 15.) Defendant argues that because Plaintiff's claims are based on the denial of insurance policy benefits, Plaintiff cannot predicate its extra-contractual bad faith claims on the same policy benefits it seeks to recover through its breach of contract claim. *Id.* at 16. Further, Defendant submits that Plaintiff is not entitled to treble or exemplary damages because Plaintiff has not identified an injury independent of the lost policy benefits.

In response, Plaintiff asserts that the Texas Insurance Code permits an insured to seek damages for the wrongful denial of policy benefits as actual damages under the statute. And because the question of coverage remains unsettled in this case, Plaintiff argues that the court cannot resolve the extra-contractual claims at summary judgment. (Doc. No. 28, at 22.)

The Texas Supreme Court has made clear that an insured may recover policy benefits as actual damages—under both the common law and the Insurance Code—if the insurer's bad faith conduct caused the loss of benefits. *See Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994) (stating a common law bad faith claim can result in benefit of the bargain damages and compensatory damages for the tort of bad faith); *Menchaca*, 545 S.W.3d at 494 ("[I]f the insured was entitled to the benefits and the insurer's statutory violation caused the insured to lose those benefits, the [Insurance Code] authorizes the insured to recover those benefits as 'actual damages . . . caused by' the statutory violation[.]" (citing Tex. Ins. Code §§ 541.151)); *see also see also* Tex. Bus. & Comm. Code § 17.50(a). Thus, no independent injury is necessary to recover policy benefits as actual damages.

16

However, the existence of an independent injury is still necessary to obtain damages above policy benefits, such as punitive damages for the tort of bad faith. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 19 (Tex. 1994) (stating that to recover punitive damages, the insured must show both (1) an aggravated mental state and (2) an injury independent from the damages related to the breach of contract); *see also Menchaca*, 545 S.W.3d at 500 ("[A]n insurer's statutory violation does not permit the insured to recover any damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits"). Plaintiff conceded at the hearing that this case does not include any claim for an injury independent of the failure to pay policy benefits and further confirmed that Plaintiff does not seek punitive damages for the tort of bad faith. Plaintiff's damages in this case arise, if at all, from Defendant's failure to comply with the terms of the contract. *See Powell Elec. Sys., Inc. v. Nat'l Union Fire Ins. Co.*, 2011 WL 3813278, at *9 (S.D. Tex. Aug. 29, 2011). Accordingly, the court finds that no genuine issue of material fact exists and recommends granting Defendant's motion for summary judgment to the extent that Plaintiff seeks punitive damages for the tort of bad faith.

Last, to the extent that Defendant moves for summary judgment on Plaintiff's claim for treble damages under the Insurance Code, the court has determined that material fact issues preclude summary judgment on Plaintiff's statutory bad faith claims. Further, such damages are provided for by statute and Defendant has not shown that treble damages are in any way subject to the independent injury rule. *Menchaca*, 545 S.W.3d at 494 (Tex. 2018) (an insured can recover "actual damages" caused by unfair and deceptive practices, plus court costs, attorney's fees, and treble damages if the insurer "knowingly" commits the prohibited act) (citing Tex. Ins. Code §§ 541.151, .152). Accordingly, Defendant's motion for summary judgment should be denied to the extent that Plaintiff seeks treble damages under the Texas Insurance Code.

## VI.    Availability of Attorney's Fees Under Chapter 542A

Defendant argues that attorney's fees for Plaintiff's extra-contractual claims are not available in this case. (Doc. No. 23, at 16.) Under Texas Insurance Code § 542A.007(c), "the court may not award attorney's fees to the claimant if the amount calculated under Texas Insurance Code §542A.007(a)(3)(A) is less than 0.2." This amount is calculated by "dividing the amount to be awarded in the judgment to the claimant for the claimant's claim under the insurance policy for damage to or loss of covered property by the amount alleged to be owed on the claim for that damage or loss in a notice given under this chapter[.]" Tex. Ins. Code § 542A.007(a)(3)(A). Defendant argues that Plaintiff's pre-suit demand letter provided that the specific amount owed by Defendant on the claim was $3,731,607.17. (Doc. No. 23, at 18.) But in Plaintiff's Rule 26(b) disclosures, Plaintiff asserted that the actual damages were $514,915.66 on a replacement cost basis and $497,000.62 on an actual cash value basis. *Id.* In applying these figures to the formula in Subsection (a)(3)(A), Defendant asserts that even if Plaintiff could demonstrate that it is entitled to the full amount of damages on a replacement cost basis, Plaintiff is not entitled to attorney's fees because the amount calculated pursuant to Subsection (a)(3)(A) would still be less than 0.2.[5] (Doc. No. 23, at 18.)

In response, Plaintiff explains that the amounts alleged in the initial Rule 26 disclosure were a typographical error, which Plaintiff cured by timely filing an amended disclosure. (Doc. No. 28, at 24.) Further, Plaintiff asserts that it provided notice of its damages calculation in its pre-suit demand letter and as an attachment to its expert disclosure pursuant to Rule 26(a)(2). *Id.* In the alternative, Plaintiff asserts that attorney's fees would still be available under its breach of contract and § 541 claims, and it would be premature to rule on Plaintiff's claims for attorney's

---

[5] $514,915.66 (replacement cost basis) divided by $3,731,607.17 (pre-suit demand) equals 0.15, which is less than 0.2.

fees because damages have not yet been determined. *Id.* Further, Plaintiff notes that Section 542.060 is a strict liability provision; all that is required for attorney's fees is liability under the Policy and Defendant's failure to pay on the claim within 60 days of receipt from the claimant of the information necessary to process the claim. *Id.* at 23.

In reply, Defendant argues that Plaintiff's amended disclosure was untimely and even if the damages calculation was provided as an attachment to Plaintiff's expert witness disclosure, it was not provided concurrently with the initial Rule 26 disclosures. (Doc. No. 32, at 13–14.) Defendant further asserts that Plaintiff has not demonstrated that the late disclosure was justified or harmless. *Id.* at 14. Last, Defendant argues that the limitation on attorney's fees in § 542A.007 applies to all claims subject Chapter 542A, including the claims in this action. *Id.* at 13.

As noted above, Defendant subsequently filed a separate motion to strike Plaintiff's amended disclosures (Doc. No. 38) which generally tracks the arguments previously articulated herein. In the alternative, Defendant seeks a continuance of the current trial date set for August 19, 2024. *Id.* Plaintiff filed a response (Doc. No. 40) and Defendant filed a motion for extension of time to file a reply (Doc. No. 41).

A late discovery disclosure is permissible if it was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). In determining whether a failure to disclose is harmless, courts look to (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose. *Bailey v. Ramos*, 657 F. Supp. 3d 927, 939 (W.D. Tex. 2023).

Here, evidence concerning the full amount of the claim is important to more than just attorney's fees; it also shows the extent of Defendant's potential exposure from the alleged breach of contract. Plaintiff explained that the incorrect number was simply an oversight and that

19

Plaintiff's counsel cured the error when they learned of it. Further, Defendant has not articulated a concrete reason why it has been prejudiced by the late disclosure. In reality, Defendant is not subject to any unfair surprise because the relevant figures were disclosed to Defendant in Plaintiff's pre-suit demand letter and as an attachment to Plaintiff's expert witness designation— both of which were disclosed well before the discovery deadline.

Accordingly, Defendant's motion to strike Plaintiff's amended disclosures and motion for extension of time to file a reply are denied. Defendant's request for continuance is denied without prejudice to its re-urging by separate motion to the district court judge. Last, Defendant's motion for summary judgment on Plaintiff's claim for attorney's fees under Chapter 542A should be denied.

## CONCLUSION

For the reasons stated above, the court **RECOMMENDS** that Defendant's amended partial motion for summary judgment (Doc. No. 23) be **GRANTED-IN-PART AND DENIED-IN-PART**. The court **RECOMMENDS** that the motion be **DENIED** as to Plaintiff's claims for statutory and common law bad faith, failure to promptly affirm or deny coverage, treble damages, and attorney's fees under Chapter 542A. The court **FURTHER RECOMMENDS** that the motion be **GRANTED** as to Plaintiff's claims for misrepresentation in violation of the Insurance Code, failure to provide a reasonable explanation for the denial of the claim, and punitive damages for Defendant's alleged bad faith.

Defendant's motion to strike Plaintiff's amended disclosures (Doc. No. 38) is **DENIED**. Defendant's request for continuance is **DENIED** without prejudice to its re-urging by separate motion to the district court judge. Defendant's motion for extension of time to file a reply concerning the motion to strike (Doc. No. 41) is **DENIED**.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within 14 days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 10th day of July, 2024.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE